IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AEROPOWER, LTD., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:03-cv-889-WKW |
| | ) | (WO) |
| STEVE MATHERLY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs AeroPower, Ltd., and Kama International, Inc., successor to AeroPower II, Ltd. (collectively "AeroPower"), bring this civil action against Defendants Steve Matherly ("Matherly"), SM&T Aircraft, Inc. ("SM&T"), Aero Records and Title Company ("Aero Records"), Sharon Shroeder ("Schroeder"), and Lori Crowell ("Crowell") alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. (Doc. # 158, Second Am. Compl.)   AeroPower also alleges various claims under Alabama state law against the defendants.  (*Id.*)

This action is presently before the court on the motions to dismiss filed by the defendants. (Docs. # 159 & 163.)  For the reasons that follow, the court concludes that the motion to dismiss[1]

---

[1] Aero Records, Schroeder and Crowell filed a Motion to Dismiss or for Summary Judgment on the Second Amended Complaint and submitted evidence in support of their motion.  (Doc. # 159.)  AeroPower filed a responsive brief to the motion with accompanying evidentiary support.  Because the court relies solely on the pleadings in addressing the defendants' failure to state a claim arguments, the court treats said motion as one to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure rather than a summary judgment motion.  *See* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .").  *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the *pleadings and exhibits attached thereto*.") (internal quotations and citation omitted) (emphasis added).

filed by Aero Records, Schroeder and Crowell (Doc. # 159) is due to be GRANTED, and the motion

to dismiss filed by Matherly and SM&T (Doc. # 163) is due to be GRANTED in part and DENIED

in part.

## I. FACTS[2] AND PROCEDURAL HISTORY

The allegations in the Second Amended Complaint set forth the following facts:

*A.*     *Facts*

This case arises out of the sale of used military aircraft.  AeroPower is a foreign corporation[3]

which primarily engages in the purchase and resale of military-related equipment of historic value.

As part of its usual business, AeroPower sells historic military-related items to the United States

Military Museum ("USSM") in exchange for surplus defense articles, such as helicopters and other

military aircraft.  AeroPower sells the aircraft for non-military reasons to third parties.  The third

parties in turn use the aircraft for non-military purposes, including construction, timber surveys, fire

control, and rescue services.

According to AeroPower, for almost ten years, it employed Matherly[4] as an independent

contractor to perform a variety of tasks, including:

> (a)     Examining log books to determine the remaining useful life
>          that is left on the defense articles offered by the USMM;
> (b)     Inspecting the defense articles externally to determine their
>          condition;
> (c)     Making recommendations to AeroPower about the defense
>          articles to accept from USMM;

---

[2]  For purposes of considering the defendants' motions to dismiss, the court presumes that the factual allegations in the Second Amended Complaint are true.  *See Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1089 (11th Cir. 2005).

[3]  Plaintiffs AeroPower, Ltd., and Kama International, Inc., are British West Indies corporations.

[4]  Matherly is an Alabama resident, and his company SM&T is an Alabama corporation whose principal place of business is in Alabama.

(d)      Coordinating communications between AeroPower and USMM;

(e)      If an exchange transaction occurred, ensuring that all parts subject to the sale were included and that the defense articles were properly transported from the military bases and stored properly;

(f)      Locating potential after-market purchasers of the defense articles obtained from the USMM;

(g)      Negotiating the sale of the aircraft and aircraft parts to third parties;

(h)      Advising AeroPower on the quality and value of helicopters and the wisdom of making certain deals; and

(i)      Maximizing the resale of helicopters or defense articles to AeroPower's customers.

(Doc. # 158, ¶ 19.)  On October 25, 1994, Matherly's employment was solidified by an "independent contractor contract" as well as a "power of attorney document" which allowed Matherly to represent AeroPower in the aircraft transactions.  (*Id*. at ¶ 20.)  AeroPower paid Matherly on a commission basis[5] and reimbursed him for expenses.

On May 6, 2003, Matherly's employment contract was terminated because AeroPower discovered that Matherly, through his company SM&T, had "engaged in wrongful conduct" summarized as follows:

(a)      Removed valuable parts from AeroPower's helicopters and converted the parts to their own use;

(b)      Selected helicopters of higher quality for their own use and the use of others and selected helicopters of lesser value for AeroPower;

(c)      Obtained helicopter parts that should have belonged to AeroPower and sold the parts to third parties without AeroPower's knowledge or consent;

(d)      Sold equipment on behalf of AeroPower to third parties for more money than disclosed to AeroPower and kept the difference between the sales price and the disclosed price;

---

[5]  According to the commission arrangement, Matherly received five percent of the sales price for any sales he arranged up to $100,000, and two percent of the sales price for amounts in excess of $100,000.  (*Id*. at ¶ 21.)

3

(e)     Altered bills of sale in order to deceive AeroPower about funds actually received or products actually sold;

(f)     Prevented AeroPower from receiving the higher value helicopters on a first-in, first-out basis;

(g)     Sold the higher value helicopters to AeroPower's customers before AeroPower obtained the lesser value helicopters, thereby flooding the market, preventing AeroPower from selling its products, and further reducing the value of AeroPower's helicopters;

(h)     Falsely represented to AeroPower that Matherly was obtaining higher value helicopters for AeroPower, reporting and turning over all the money and property that belonged to AeroPower, and otherwise acting in AeroPower's best interest;

(i)     Suppressed or concealed from AeroPower that Matherly was obtaining higher value helicopters for himself and others, was not reporting or turning over all the money and property that belonged to AeroPower, was altering bills of sale to hide money and property, and was otherwise not acting in AeroPower's best interest;

(j)     Falsely submitted expenses for reimbursement from AeroPower while working for the interests of third parties against those of AeroPower;

(k)     Acted in concert to accomplish the conduct described . . . ; and

(l)     Associated in fact for the common purpose of enriching themselves by defrauding AeroPower with respect to AeroPower's sale of equipment to the USMM and obtaining defense articles from the USMM in return.

(*Id*. at ¶ 22.)

In addition to the wrongful acts alleged above, the Second Amended Complaint describes four specific aircraft transactions which form the basis of this lawsuit.  (*Id*. at ¶¶ 23- 53.)  In regard to the four transactions, AeroPower includes allegations against Aero Records,[6] the escrow agent for

---

[6]  Aero Records is an Oklahoma corporation.

the transactions at issue, and two Aero Records employees, Schroeder[7] and Crowell[8] (collectively "Aero Records defendants").  These four transactions are described below.

First, in February 2001, Matherly brokered a deal to sell three AeroPower helicopters. Although Matherly sold the three helicopters for $150,000, he represented to AeroPower that he sold the helicopters for only $75,000, and changed the serial numbers on two of the bills of sale for the helicopters.

Second, in the summer of 2001, Matherly arranged to sell sixteen helicopters for approximately  $1.1 million but informed AeroPower that the sales price was only $832,000, a sum described by Matherly as a "good deal."  (*Id*. at ¶ 28.)  Matherly notified Aero Records that the total sales price would be $1.1 million and AeroPower notified Aero Records of the sale for the lower figure.  AeroPower's closing instructions to Aero Records "stated that ten helicopters were being sold to Aero-Jet PMB for $520,000, that six helicopters were being sold to Construction Helicopters for $312,000, and that the bills of sale were signed and left blank so that Aero Records could fill in the names of the appropriate buyers."  (*Id*. at ¶ 31.)  The closing instructions also listed the specific serial numbers of the helicopters being sold to each buyer.

Despite AeroPower's closing instructions as to the identity of the ultimate purchasers, Aero Records completed the bills of sale for ten of the helicopters in the name of Richard Slaney ("Slaney") and completed the bills of sale for four of the helicopters in the name of Lakeland Helicopters.  The total price paid for these *fourteen* helicopters by Slaney and Lakeland Helicopters was over $1.1 million.   However, Matherly, as duly authorized agent for AeroPower, instructed

---

[7]  Schroeder is the president of Aero Records and is an Oklahoma citizen.

[8]  Crowell is a title agent with Aero Records and is an Oklahoma citizen.

Aero Records to disburse only $832,000 of this total purchase price to AeroPower.[9]  Further, Aero Records prepared and sent to AeroPower a Statement of Receipt and Disbursement of Funds showing that the *sixteen* helicopters listed in the closing instructions had been sold to Aero-Jet PMB and Construction Helicopters for a total sales price of $832,000, even though only *fourteen* helicopters were actually sold in this transaction.

The third transaction occurred one month after the sale of the fourteen helicopters.  Matherly sold the remaining two helicopters  for $100,000 to a third party without notifying AeroPower.[10]  According to AeroPower's closing instructions to Aero Records, these two helicopters were to be sold to Construction Helicopters.  AeroPower complains that it received no funds from this aircraft sale.

Finally, in September 2001, Matherly sold a set of composite blades for $90,000 to a third party without AeroPower's knowledge.[11]  Unbeknownst to AeroPower, these composite blades had been removed from one of the sixteen helicopters and Matherly had previously informed AeroPower that the helicopter had no blades.

According to AeroPower, in all four of these transactions "Aero Records failed to follow AeroPower's closing instructions and, instead, followed instructions from Defendant Matherly and others . . . ."  (*Id*. at ¶ 52.)  AeroPower alleges that the defendants used the "United States mail, private or commercial carriers, or telephonic and facsimile transmissions across interstate commerce" in completing these transactions.  (*Id*. at ¶ 51.)

---

[9]  The remainder of the sale amount was split between Matherly and Marty Smith ("Smith"), the owner of Construction Helicopters.

[10]  Matherly also split the majority of the proceeds of this sale with Smith.  (*Id*. at ¶ 46.)

[11]  Matherly and Smith split the proceeds of this sale.  (*Id*. at ¶ 51.)

B.      *Procedural History*

On August 26, 2003, AeroPower filed this action against Defendants Matherly and SM&T. (Doc. # 1, Compl.)  A year after the case was filed, AeroPower discovered information that led it to amend the complaint to include claims against the Aero Records defendants.  (Doc. # 77.)  The amended complaint asserted numerous claims against all the defendants, including various violations of RICO as well as various state law claims.  (Doc. # 88, First Am. Compl.)  On May 1, 2006, upon the Magistrate Judge's Recommendation, this court held that the amended complaint failed to adequately allege RICO claims against the defendants.  (Doc. # 154.)  The court dismissed the amended complaint but permitted AeroPower to file another amended complaint.  (*Id.*)

On June 6, 2006, AeroPower filed a Second Amended Complaint with exhibits attached. (Doc. # 158.)  The Second Amended Complaint alleges four federal RICO claims against the defendants, 18 U.S.C. § 1962 (a)-(d), as well as state law claims for breach of contract, breach of fiduciary duty, unjust enrichment, accounting, conversion, fraud, suppression, deceit, innocent misrepresentation, promissory estoppel, and conspiracy.  (*Id.*)

On June 26, 2006, Matherly and SM&T filed an answer to the Second Amended Complaint and alleged a counterclaim against AeroPower for breach of contract, fraud, and unpaid commissions.  (Doc. # 162.)  AeroPower filed an answer to the counterclaim  on July 13, 2006. (Doc. # 172.)

The defendants filed separate motions seeking dismissal of some of the claims alleged in the Second Amended Complaint.  (Docs. # 159 & 163.)  The Aero Records defendants seek dismissal of the RICO claims in the Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and assert that this court lacks *in personam* jurisdiction over them

7

under Federal Rule of Civil Procedure 12(b)(2).  (Doc. # 160.)  Defendants Matherly and SM&T

seek dismissal of the RICO claims, the state law claims for conspiracy and fraud, and the claims

alleged against SM&T under Federal Rule of Civil Procedure 12(b)(6).  (Doc. # 163.)  AeroPower

filed its opposition to the motions (Docs. # 187, 188, 189) and the Aero Records defendants filed

a reply (Doc. # 196).[12]  The motions are fully briefed and ripe for consideration by the court.[13]

## II.  JURISDICTION AND VENUE

AeroPower alleges that this court has subject matter jurisdiction over this action pursuant 28

U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity jurisdiction).  (Doc. # 158.)

Defendant Matherly does not contest personal jurisdiction or venue.

## III.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  A court may dismiss a

complaint for failure to state a claim only if it is clear that no relief could be granted under any set

of facts that could be proven consistent with the allegations in the complaint.  *See Hishon v. King*

*& Spalding,* 467 U.S. 69, 73 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986)

("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of the claims in the complaint that would entitle him or her to relief.") (citation

omitted).  The court will accept as true all well-pleaded factual allegations and will view them in a

light most favorable to the nonmoving party.  *Hishon,* 467 U.S. at 73.  Furthermore, the threshold

is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim.  *See*

---

[12]  Although given an opportunity to do so, Matherly and SM&T failed to file a reply to AeroPower's opposition to their motion to dismiss.

[13]  Exercising its discretion, the court declines to conduct an evidentiary hearing on the Aero Records defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, and the court observes that no party has requested a hearing. *See* Fed. R. Civ. P. 12(b)(2); *see Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 255 (11th Cir. 1996).

*Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985).

A Rule 12(b)(2) motion tests the court's exercise of personal jurisdiction over a defendant. The plaintiff bears the burden of establishing personal jurisdiction over a nonresident defendant. *See S & Davis Int'l, Inc. v. The Republic of Yemen,* 218 F.3d 1292, 1303 (11th Cir. 2000). When the issue of personal jurisdiction is decided on the briefs and accompanying evidence, but without a discretionary evidentiary hearing, a plaintiff satisfies his or her burden by demonstrating a "prima facie case of jurisdiction." *Francosteel Corp., Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange,* 19 F.3d 624, 626 (11th Cir. 1994); *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990). A plaintiff establishes a prima facie case by submitting evidence sufficient to defeat a motion for judgment notwithstanding the verdict. *See Delong Equip. Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir. 1988). Consonant with that standard of review, the court construes the allegations in the complaint as true if they are uncontroverted by affidavits or deposition testimony. *See Bracewell v. Nicholson Air Servs., Inc.,* 748 F.2d 1499, 1504 (11th Cir. 1984). The Eleventh Circuit has explained on more than one occasion that, "[i]f a plaintiff pleads sufficient material facts to establish a basis for personal jurisdiction and a defendant then submits affidavits controverting those allegations, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction[,] unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.'" *Whitney Info. Network, Inc. v. Xcentric Venture, LLC,* 2006 WL 2243041, *3 (11th Cir. 2006) (quoting *Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir. 2002)). If the evidence conflicts, the court makes reasonable inferences in favor of the plaintiff, particularly when the jurisdictional questions are seemingly intertwined with the merits of the case. *See Delong,* 840 F.2d at 845.

# IV.  DISCUSSION

All defendants argue that AeroPower's RICO claims should be dismissed in their entirety. In addition, the Aero Records defendants argue that, assuming the RICO claims are dismissed, there is no basis for this court to exercise personal jurisdiction over them.[14]  Defendants Matherly and SM&T argue that SM&T should be dismissed from this case and that AeroPower's fraud claims are due to be dismissed.  Defendants Matherly and SM&T also argue that, if the Aero Records defendants are dismissed, then the state law conspiracy claim is due to be dismissed.  AeroPower responds that both its RICO and state law claims confer, independently, personal jurisdiction on this court.  Furthermore, AeroPower argues that all of its claims are sufficiently pled.

The court addresses each of these arguments in turn.

## A.     Abandoned Claims

In response to the motions presently before the court and in the course of litigation, AeroPower has explicitly abandoned some of its claims.  Specifically, AeroPower "concede[d] that Aero Records is entitled to summary judgment on the RICO claims under 18 U.S.C. § 1962(a) and (b)" and "agree[d] to dismiss SM&T as a defendant in this case." (Docs. # 139 at 30 n.8; 189 at ¶1.) Furthermore, in the proposed pretrial order submitted by the parties for the pretrial conference held on July 31, 2006, AeroPower conceded that the defendants are entitled to summary judgment on its RICO claims under 18 U.S.C. § 1962(a) and (b).[15]  Accordingly, the defendants' motions are due to be granted in relation to these claims.

---

[14]  RICO provides for nationwide service of process in private suits.  *See* 18 U.S.C. § 1965(d).

[15]  A status conference was held in lieu of this scheduled pretrial conference.  (*See* Docs. # 181 & 183.)

B.    *RICO Claims*

All of the defendants move to dismiss the remaining RICO claims brought pursuant to 18 U.S.C. § 1962(c) and (d).   In the Second Amended Complaint, AeroPower alleges that the defendants engaged in a scheme to defraud AeroPower of money by "means of false and fraudulent pretenses and representations," and committed multiple acts of mail and wire fraud in furtherance of the scheme, establishing a pattern of racketeering activity.  (Doc. # 158 at ¶ 96.)  In addition to seeking treble damages, AeroPower seeks attorneys fees and court costs.

Pursuant to 18 U.S.C. § 1962(c), it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c).  Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962]."  The court in turn addresses each of these RICO claims.

1.    *RICO Claim Under Section 1962(c)*

In order to establish a federal civil RICO violation under § 1962(c), AeroPower is required to "satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1282 (11th Cir. 2006) (quoting *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994)).[16]  The plaintiff in a RICO case must identify and prove a pattern of racketeering activity, defined as two "predicate acts" of racketeering activity within a 10 year period.  *See* 18 U.S.C. § 1961(5).  Thus, in order to survive a motion to

---

[16]  These four requirements apply whether the RICO claim is civil or criminal in nature.  *Id*.  However, in civil RICO cases, "the plaintiffs must also satisfy the requirements of 18 U.S.C. § 1964(c). . . . [T]hus, . . . [the plaintiffs] must show (1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation."  *Id*. at 1282-83.

dismiss, the plaintiff must allege facts sufficient to support at least two of the predicate acts of racketeering activity. *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 949 (11th Cir. 1997). RICO defines "racketeering activity" as the enumerated crimes listed in 18 U.S.C. § 1961(1), including mail and wire fraud. 18 U.S.C. § 1961(1)(B); *see also* 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud).[17] In this action, AeroPower alleges that the defendants violated the federal mail and wire fraud statutes, and thus committed the requisite predicate acts for civil RICO liability.

A plaintiff must show the following elements to establish liability under the federal wire and mail fraud statutes: "(1) that defendants knowingly devised or participated in a scheme to defraud [the plaintiff], (2) that they did so willingly with an intent to defraud, and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme." *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000)." Hence, in order to survive the motions to dismiss, AeroPower must allege facts sufficient to support at least two acts of mail and wire fraud. *See Republic of Panama*, 119 F.3d at 949.

    a.    *Federal Rule of Civil Procedure 9(b)*

The defendants argue that AeroPower's RICO claims are due to be dismissed on the grounds that they are not properly pled with particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) of the Federal Rules of Civil Procedure provides that, "[i]n all

---

[17] The federal mail and wire fraud statutes provide:

"Whoever, having devised . . . any scheme or artifice to defraud . . . for the purpose of executing such scheme . . . places in any post office . . . any matter or thing whatever . . . to be delivered by the Postal Service . . . shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1341 (mail fraud).

"Whoever, having devised . . . any scheme or artifice to defraud . . . transmits . . . by means of wire . . . any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme . . . shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1343 (wire fraud).

averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This "particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (internal quotations and citation omitted). "The application of the rule, however, must not abrogate the concept of notice pleading." *Id*. Rule 9(b) applies to RICO actions based on mail or wire fraud. *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988).

The Eleventh Circuit has elucidated that

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1310 (11th Cir. 2002). However, "alternative means are also available to satisfy the rule." *Durham*, 847 F.2d at 1512.[18]

In this case, AeroPower's Second Amended Complaint satisfies this standard.[19] According to the factual allegations in the Second Amended Complaint:

---

[18] In other cases, the Eleventh Circuit has found challenged complaints-- read together with other documents in the record--to be sufficient. In *Durham,* for example, the Circuit observed that "[a]llegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule." 847 F.2d at 1512 (emphasis in original). In that case, which involved summary judgment on mail fraud used as a predicate RICO act, the Circuit found that affidavits stating the title, sender and date of a specific letter received in addition to references to receiving additional letters by mail "[f]rom time to time during the next several years" from other named individuals satisfied Rule 9(b) concerning the use of mails. *Id.*

[19] The level of specificity with which the Aero Records defendants have responded, in its motion to dismiss, to the Second Amended Complaint's numerous factual allegations is indication enough that the defendants have been alerted to the "precise misconduct with which they are charged." *Durham*, 847 F.2d at 1511.

(1)     Matherly removed valuable parts from AeroPower's helicopters and converted the parts to [his] own use.

(2)     Matherly obtained helicopter parts that should have belonged to AeroPower and sold the parts to third parties without AeroPower's knowledge or consent.

(3)     Matherly sold equipment on behalf of AeroPower to third parties for more money than disclosed to AeroPower and kept the difference between the sales price and the disclosed price.

(4)     Matherly altered bills of sale in order to deceive AeroPower about funds actually received or products actually sold.

(5)     Matherly falsely represented that he was acting in AeroPower's best interest and suppressed or concealed that he was not acting in AeroPower's best interest.

(6)     Matherly falsely submitted expenses for reimbursement from AeroPower while working for the interests of third parties against those of AeroPower.

(7)     Aero Records failed to follow [AeroPower's] closing instructions and, instead, followed instructions from Defendant Matherly and others in completing the sales transactions of [AeroPower's] property.

(8)     Defendants used the United States mail, private or commercial carriers, or telephonic facsimile transmissions across interstate commerce . . . .

(9)     As a result of Defendants' taking money, property, and business opportunities and the other conduct described above, AeroPower has been damaged by the loss of money and property.

(Doc. # 158 at ¶¶ 22, 52, 53, 55.)  The Second Amended Complaint then lists and describes 68 documents which evidences the defendants' use of the mails and interstate wires.[20]  (*Id.* at ¶ 53.) AeroPower identifies each document by Bates stamp and provides  (1) the date of each letter, invoice, facsimile or statement, (2) the name of the sender and recipient for each document, (3) the geographic location of each sender and recipient, and (4) a brief description of what the document is regarding.  (*Id.* at 13) ("AeroRecords-000099 Fax to National City Bank (Ohio) from Aero Records dated 6/4/2001 regarding wiring instructions for funds to be sent to Defendant Matherly in Alabama and Construction Helicopters in California").  Considering the allegations contained in the Second Amended Complaint and the attached documents, the court finds that AeroPower has satisfied the standard of particularity under Rule 9(b).

---

[20]  Copies of these documents are attached to the Second Amended Complaint.  (Doc. # 158, Ex. A.)

b.      *Pattern of Racketeering Activity*

The defendants argue that AeroPower's RICO claims are due to be dismissed because the allegations in the Second Amended Complaint fail to satisfy the requirement of a pattern of racketeering activity.  The court agrees.

To successfully allege a pattern of racketeering activity, a plaintiff must allege that: "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (citations omitted). "In order to prove a 'pattern of racketeering activity' it is not sufficient to simply establish two isolated predicate acts.  RICO targets *ongoing* criminal activity, rather than sporadic, isolated criminal acts . . . ."  *Id.*

The Supreme Court has held that the two or more predicate acts must be related and demonstrate "continuity."  *H.J. Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 239 (1989).  In explaining RICO's continuity requirement, the Supreme Court has stated:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition . . . .  A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.  Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.  Often a RICO action will be brought before continuity can be established in this way.  In such cases, liability depends on whether the *threat* of continuity is demonstrated.

*Id.* at 241-42 (emphasis in original).  In "open-ended" cases that rely on alleging the *threat* of continuity, plaintiffs can meet their burden by establishing either that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future," or that "the

predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* at 242. In light of the foregoing principles, the court finds that AeroPower has failed to establish either closed- or open-ended continuity.[21]

Turning first to closed-ended continuity, the court notes that the Second Amended Complaint fails to allege a specific period of time for the unlawful conduct. The Second Amended Complaint discusses transactions involving the defendants which occurred in February 2001 and continued through September 2001.[22] The relevant period of time, therefore, that the predicate acts can be considered to have been ongoing is approximately eight months. Although "no court has unequivocally declared a minimum period of time that can be considered 'substantial,'" the Eleventh Circuit has found that nine months is not an adequately substantial period of time. *Jackson*, 372 F.3d at 1266-1267. In light of *Jackson*, AeroPower's alleged eight-month time period is insufficient to satisfy closed-ended continuity.[23] Moreover, in cases like this one, "where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *Id.* at 1267. Here, AeroPower alleges that the defendants engaged in a single scheme to defraud AeroPower of

---

[21] For the sake of analyzing whether AeroPower properly alleged the continuity element of a pattern of racketeering activity, the court takes as true AeroPower's allegations that the defendants are an enterprise and that the alleged unlawful conduct constitutes predicate acts for RICO purposes.

[22] There is no dispute that these predicate acts, if they occurred, are related. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1496-97 (11th Cir. 1991) ("Predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." (internal quotation marks and citation omitted)).

[23] *See also Downing v. Halliburton & Assocs., Inc.*, 812 F. Supp. 1175, 1182-83 (M.D. Ala. 1993) (finding commission of twelve acts completed within eight-month period did not constitute an "ongoing, continuous criminal 'pattern of racketeering'"), *aff'd without opinion*, 13 F.3d 410 (11th Cir. 1994); *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 922 (7th Cir. 1992) (court concluded that "one scheme that lasted at most seven to eight months" was "precisely the type of short-term, closed-ended fraud that . . . [the Seventh Circuit] has held does not constitute a pattern").

money and property in the four aircraft transactions at issue (three of which involve the same group of sixteen helicopters).  Although Matherly was employed by AeroPower for almost ten years, AeroPower does not allege that Matherly engaged in such conduct with other escrow agents prior or subsequent to this eight-month period.  Considering the finite nature of the alleged racketeering activity, and its alleged occurrence over a relatively modest period of time, this court concludes that AeroPower failed to meet the closed-ended continuity requirement necessary to sustain a RICO violation.

Further, the allegations in the Second Amended Complaint plainly fail to allege facts sufficient to establish open-ended continuity.  While AeroPower generally alleges that the defendants engaged in the alleged "conduct" as "part of [their] regular  way of doing business," (Doc. # 158 at ¶ 54), AeroPower offers no factual allegations which support this conclusory allegation.  Such conclusory allegations, alone, are insufficient to survive a motion to dismiss.  *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1199 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.").  Here, there is no indication that there are other incidents where the defendants have conducted themselves in the same manner and AeroPower has offered no prior examples of how this conduct factors in with the defendants' regular business practices.  In addition, nowhere in the Second Amended Complaint does AeroPower suggest that the defendants engaged in predicate acts of mail and wire fraud in aircraft transactions subsequent to the four transactions at issue, although "Aero Records acted as the escrow agent in several later transactions involving the sale of AeroPower's helicopters."  (Doc. # 158 at ¶ 26.)  Further, nothing in the Second Amended Complaint indicates that there is a threat of repetition of the alleged predicate acts by the defendants in the future.  The allegations in the Second Amended Complaint do not indicate that there were

17

other victims of this alleged scheme and AeroPower has not alleged that the defendants treated other clients in the same or similar manner.

Accordingly, the court finds that AeroPower has failed to allege facts establishing continuity of the defendants' conduct, and has therefore failed to allege that the defendants engaged in a pattern of racketeering activity.  Hence, taking as true the allegations of the Second Amended Complaint, the court concludes that AeroPower fails to state a RICO claim under Section 1962(c) and, as a result, this RICO claim is due to be dismissed.

2.    *RICO Conspiracy Claim*

As previously stated, 18 U.S.C. § 1962(d) makes it illegal to conspire to violate a substantive RICO provision.  To state a claim under § 1962(d), AeroPower "must allege facts to support an agreement to violate a substantive provision of the RICO statute."  *Carter v. MGA, Inc.*, 189 Fed. Appx. 893, 895 (11th Cir. 2006).  In the Second Amended Complaint, AeroPower generally alleges that the defendants "unlawfully and willfully combined, conspired, confederated, and agreed with each other to violate [18 U.S.C. § 1962(c)], as described above."  (Doc. # 158 at ¶ 106.)  However, the conclusory allegation that the defendants conspired with each other is insufficient to survive a motion to dismiss as AeroPower alleged no facts to show or to create a reasonable inference that the defendants made an agreement.  *See Jaharis*, 297 F.3d at 1199.

Even assuming *arguendo* that such an agreement existed between the defendants, AeroPower's RICO conspiracy claim still fails. "To be guilty of conspiracy, . .  parties must have agreed to commit an act that is itself illegal - parties cannot be found guilty of conspiring to commit an act that is not itself against the law."  *Jackson*, 372 F.3d at 1269 (quoting *United States v. Vaghela*, 169 F.3d 729, 732 (11th Cir. 1999)).  The same principle applies in civil conspiracies.  *See Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1199 (11th Cir. 2004) ("A conspiracy

18

itself furnishes no cause of action.  The gist of the action is not the conspiracy but the underlying wrong that was allegedly committed.  If the underlying cause of action is not viable, the conspiracy claim must also fail." (internal quotation marks and citation omitted)).  Because this court has already found that the factual allegations in the Second Amended Complaint fail to state a substantive RICO claim and the RICO conspiracy claim adds no additional factual allegations, AeroPower's RICO conspiracy claim fails.  *See Jackson*, 372 F.3d at 1269 (holding that RICO conspiracy claim failed because alleged underlying conduct did not constitute a RICO violation).  Accordingly, the defendants are entitled to dismissal of AeroPower's RICO conspiracy claim.

C.      *Personal Jurisdiction over Aero Records Defendants*

With the RICO claims dismissed, the Aero Records defendants argue that personal jurisdiction over them is lacking and that, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, they are due to be dismissed as defendants in this case.  In a diversity action,[24] like this one, "a federal court may assert jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum State, and only if the exercise of the jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment." *Vermeulen v. Renault U.S.A., Inc.*, 975 F.2d 746, 753 (11th Cir. 1992), *op. modified and superseded on other grounds*, 985 F.2d 1534 (11th Cir. 1993).  However, "[w]hen the courts of the forum State have interpreted the forum's long-arm statute to confer jurisdiction to the limits allowed by federal due process, state law need not be applied: [the court] need only ask whether the exercise of jurisdiction over the nonresident defendant comports with due process." *Id.*  Here, Alabama's long-

---

[24] According to the Second Amended Complaint, AeroPower has invoked both this court's diversity and federal question jurisdiction.  (Doc. # 158 at ¶ 12.)  However, due to the dismissal of AeroPower's RICO claims, there is no basis for federal question jurisdiction.  The court therefore has subject matter jurisdiction over this action based upon diversity jurisdiction as complete diversity exists and the amount in controversy is more than $75,000.

arm statute authorizes personal jurisdiction to the fullest extent permitted by the United States Constitution.  *See Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) ("Alabama's long-arm statute authorizes Alabama courts to assert jurisdiction to the fullest extent constitutionally permissible."); Ala. R. Civ. P. 4.2(a)(2).  Thus, the sole issue in this court's jurisdictional analysis is whether Alabama's exercise of jurisdiction over the Aero Records defendants violates due process.

"The Due Process Clause protects one's liberty interests by shielding an individual from binding judgments in a forum with which he or she has established no meaningful contacts, ties or relations." *Ashton v. Florala Mem'l Hosp.*, 2006 WL 2864413, *4 (M.D. Ala. 2006) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  Due Process "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mutual Serv. Ins. Co.*, 358 F.3d at 1319 (citation omitted).

In assessing a defendant's minimum contacts with the forum state, courts have distinguished between contacts establishing "specific" and "general" personal jurisdiction.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, n.9 (1984) ("*Helicopteros*").

> Specific [personal] jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint.  It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where the defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  The requirement that there be minimum contacts is grounded in fairness.  It assures that "the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there."

*Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (internal citations omitted), *cert. denied*, 534 U.S. 827 (2001).  On the other hand, general personal jurisdiction derives

from the defendant's contacts with the forum that are unrelated to the action being litigated.  *Consol. Dev. Corp.*, 216 F.3d at 1292.  "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state."  *Id.*

In the Second Amended Complaint, AeroPower alleges that "the Court  . . . has personal jurisdiction over [the Aero Records defendants] because they have sufficient minimum contacts with Alabama in that they engaged in a conspiracy with Alabama residents to achieve the conduct described . . . which involved mailing documents to Alabama, disbursing fraudulently obtained funds to an Alabama resident, wiring money to an Alabama bank account, making telephone calls to Alabama, and faxing documents to Alabama . . . ."  (Doc. # 158 at ¶ 11.)  These allegations speak to the exercise of specific personal jurisdiction over the Aero Records defendants.  There are no allegations in the Second Amended Complaint which assert that the Aero Records defendants had continuous and systematic contacts with the State of Alabama sufficient to satisfy the standard for exercising general personal jurisdiction.[25]  The issue before this court, therefore, is one of specific, not general, personal jurisdiction.

The Eleventh Circuit has formulated a three-part test for ascertaining whether there are sufficient minimum contacts for a court to exercise specific personal jurisdiction over a nonresident defendant:

First, the contacts must be related to the plaintiff's cause of action or have given rise

---

[25] In addition, the relevant evidence submitted to the court by the Aero Records defendants does not support a finding of general personal jurisdiction. (Doc. # 126, Ex. G, Sharon Schroeder Aff. at 3) ("Aero Records only does business in the State of Oklahoma.  Aero Records has never operated as a business in the State of Alabama[,] . . . [never] been licensed or authorized to do business in Alabama[,] . . . never owned property in Alabama[,] . . . [never] had a mailing address in Alabama[,] . . . never had a bank account in Alabama, nor paid taxes in Alabama[,] . . . never advertised in Alabama[,] . . . [and] does not have and has never had any employees, agents, or servants who are citizens of the State of Alabama.").  AeroPower did not submit any evidence pertaining to the issue of personal jurisdiction.

to it.  Second, the contacts must involve "some act whereby the defendant purposely avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws."  Third, the defendant's contacts with the forum must be "such that [the defendant] could reasonably anticipate being haled into court there."

*Vermeulen,* 985 F.2d at 1546 (internal citations omitted).  "When considering the *Vermeulen* factors, a court also should remain mindful that '[i]t is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil or may arise incident to the commission of a single act directed at the forum.'"  *Ashton,* 2006 WL at *4 (quoting *Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir. 1990)).

Considering the three-part minimum contacts test articulated in *Vermeulen,* the court finds that the requisite minimum contacts for the exercise of specific jurisdiction over the Aero Records defendants do not exist.  First, the allegations in the Second Amended Complaint and evidence before the court establish that, as a result of the Aero Records defendants' performance as escrow agent in the transactions at issue, they[26] had telephone, fax, mail and wire communications with Matherly, an Alabama resident.  All of these contacts with Alabama were for the purpose of completing the aircraft transactions at issue, and these aircraft transactions form the predicate of AeroPower's cause of action.  Therefore, the first prong of the *Vermeulen* analysis is satisfied as the Aero Records defendants' contacts with the State of Alabama are related to AeroPower's cause of action.

The second prong of the *Vermeulen* analysis, however, is where AeroPower's assertion of personal jurisdiction fails.  As previously noted, the Aero Records defendants had virtually no

---

[26] For the sake of convenience, the court collectively refers to the Aero Records defendants' contacts with Alabama in this Opinion.  Although Crowell engaged in different activities in performing the escrow agent responsibilities than Schroeder, both of them performed their tasks in the course of their employment at Aero Records.

contact with Alabama other than telephone, fax, mail and wire communications with Matherly in relation to the aircraft transactions. Aero Records is not incorporated in Alabama, or licensed, registered, or authorized to do business in Alabama.[27] Aero Records does not have offices, agents or bank accounts in Alabama, nor do it has officers or employees located in Alabama.[28] There is no evidence that an Aero Record employee traveled to Alabama in connection with this matter.[29] Moreover, there is simply no evidence that the Aero Records defendants initiated any contact whatsoever with Alabama concerning the aircraft transactions at issue. The evidence establishes that Aero Records was contacted in Oklahoma by the parties involved in these transactions to provide title and escrow services.[30] Further, the aircraft bills of sale were not executed in or delivered to Alabama, the escrow funds were not held in Alabama, none of the aircraft was sold to a purchaser in Alabama, and the aircraft transactions at issue were not closed in Alabama.[31] Finally, there is no evidence which indicates that the aircraft at issue was located in Alabama nor that any of AeroPower's injuries occurred in Alabama. *See Bowling v. Founders Title Co.,* 773 F.2d 1175 (11th Cir. 1985) (finding that Alabama had personal jurisdiction over a California defendant who made misrepresentations by phone and mail to an Alabama plaintiff regarding transaction that the out-of-state defendant knew involved the sale of land located in Alabama).

Considering the quality, nature, and extent of the Aero Records defendants' contacts with

---

[27] (Schroeder Aff. at ¶ 3.)

[28] (*Id*.)

[29] (*Id*. at ¶ 6.)

[30] (*Id*. at ¶ 7.)

[31] (*Id*. at ¶¶ 8-10.)

Alabama, as well as the association between these contacts and the instant litigation, the court finds that none of said defendants' contacts with Alabama can support a finding of purposeful activity invoking the benefits and protections of Alabama. Although the Aero Records defendants' contacts were tangentially related to Alabama, the court finds that the "nature and quality and the circumstances of [their] commission create only an 'attenuated' affiliation with the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n. 18 (1985) (citations omitted). *See Ashton*, 2006 WL at *6 ("Courts have no power over a nonresident defendant whose contact with the jurisdiction are 'random,' 'fortuitous' or 'attenuated,' or the result of the unilateral activity of another party or a third person.") (citations omitted).

Having found no purposeful availment, the court pretermits full analysis of the third prong of the *Vermeulen* analysis. However, it logically follows that because the Aero Records defendants did not purposefully direct any activity at the forum state, their contacts are not "such that [they] could reasonably anticipate being haled into court [in Alabama]." *Vermeulen*, 985 F.2d at 1546.[32] *See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000) ("[I]t is important to remember that the conduct at issue is that of the defendants . . . benefits of doing business in Alabama such that the notions of reasonableness and fairness are not offended by requiring them to defend themselves in an Alabama court.")

In short, there is no evidence that the Aero Records defendants' contacts with Alabama were continuous and systematic so as to support the court's exercise of general personal jurisdiction over them. Moreover, the court concludes that the *Vermeulen* test for determining minimum contacts is

---

[32] Furthermore, because the court finds that the Aero Records defendants do not have the requisite minimum contacts with Alabama necessary to support the exercise of personal jurisdiction over them, the court need not address the fairness tier of the due process inquiry.

not satisfied; thus, this court's exercise of specific personal jurisdiction over the Aero Records defendants is also unsupported.  Personal jurisdiction over the Aero Records defendants, therefore, is lacking and AeroPower's claims against said defendants are due to be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[33]

D.      **Conspiracy Claim**

In the Second Amended Complaint, AeroPower alleges that Matherly, SM&T and the Aero Records defendants engaged in a conspiracy "to deprive AeroPower of its money and property." (Doc. # 158 at ¶¶ 85-87.)  Due to the dismissal of SM&T and the Aero Records defendants from this lawsuit, Matherly argues that AeroPower's conspiracy claim is due to be dismissed.  The court agrees.

"Civil conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Hooper v. Columbus Reg'l Healthcare Sys., Inc.*, __ So. 2d __, 2006 WL 2988689, *4 (Ala. 2006) (citations omitted).  Because the court has determined that SM&T and the Aero Records defendants are due to be dismissed from this action, AeroPower's conspiracy claim must fail because there is no "combination of two or more persons" to support a conspiracy theory.  Otherwise stated, the conspiracy claim cannot proceed against Matherly alone.  *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) ("[I]t is not legally possible for an individual person to conspire with himself . . . .").  Accordingly, Matherly's motion to dismiss is due to be granted in relation to AeroPower's conspiracy claim.

E.      **Fraud Claim**

In his motion to dismiss, Matherly requests the court to dismiss AeroPower's fraud claim.

---

[33]  Consequently, it is unnecessary for the court to address the Aero Records defendants alternative motion for summary judgment.

(Doc. # 163 at 4.)  However, in his memorandum brief in support of the motion to dismiss, Matherly fails to argue to the court why the fraud claim is subject to dismissal.  (Doc. # 164 at 11) (seeking dismissal of SM&T, the RICO claims, and the conspiracy claim).  Accordingly, the court finds that Matherly has abandoned his pursuit of dismissal of this claim.  The motion to dismiss is therefore due to be denied in relation to AeroPower's fraud claim.

F.    *Ability to Amend Complaint*

This marks AeroPower's third try at drafting a complaint.  Ordinarily, when a party files an insufficient complaint, a court will direct the party to file a properly drafted one that complies with the notice provisions of the pleading rules or grant a motion for more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.  In view of the court's admonitions and directions in previous proceedings and orders, no other option exists other than dismissing the deficiently-pled claims in the Second Amended Complaint pursuant to Rule 12(b)(6).  *See Welch v. Laney,* 57 F.3d 1004, 1009 (11th Cir. 1995) (noting that district court may dismiss a case for failure to meet the pleading rules where court granted plaintiff the opportunity to amend after first determining that the original complaint was deficient and plaintiff failed to properly amend to cure deficiency).  Thus, AeroPower will not be afforded further opportunities to amend its complaint.

**V.  CONCLUSION**

For the foregoing reasons, it is hereby ORDERED that:

1.    Matherly and SM&T 's motion to dismiss (Doc. # 163) is DENIED in relation to the fraud claim and GRANTED in all other respects.

2.    The Aero Records defendants' motion to dismiss the RICO claims pursuant to Rule

26

12(b)(6) of the Federal Rules of Civil Procedure (Doc. # 159) is hereby GRANTED.

3.   Plaintiff's RICO claims under 18 U.S.C. § 1962(a), (b), (c) and (d) are DISMISSED.

4.    Plaintiff's state law conspiracy claim is DISMISSED.

5.   The Aero Records defendants' motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (Doc. # 159) is hereby GRANTED.  All state law claims asserted against Aero Records and Title Company, Sharon Schroeder and Lori Crowell are hereby DISMISSED without prejudice and said defendants are hereby DISMISSED as defendants in this lawsuit.

6.   The motions for summary judgment (Docs. # 159 & 124) filed by Defendants Aero Records, Schroeder and Crowell are DENIED as moot.

DONE this 18th day of January, 2007.


_____/s/   W.  Keith Watkins_____
UNITED STATES DISTRICT JUDGE